**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO:**

MITCH CORBIN, individually and
on behalf of all others similarly situated,

      Plaintiff,

      v.

ACCESS ONE CONSUMER HEALTH,
INC., a Florida corporation, PRODIGY
HEALTH GROUP LLC, a Florida
limited liability company,

      Defendants.

_____/

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

      Plaintiff, MITCH CORBIN (hereinafter "Plaintiff"), brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendants, ACCESS ONE CONSUMER HEALTH, INC. ("ACCESS ONE") PRODIGY HEALTH GROUP LLC ("PRODIGY"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

      1.  Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently or willfully contacting Plaintiff on Plaintiff's personal cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own

acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.   In the course of selling their services, Defendants and/or their agents placed thousands of automated calls to consumers' cell phones nationwide using an automatic telephone dialing system in violation of the TCPA.

3.   Plaintiff and each Class Member received unwanted telephone robocalls from Defendants. Moreover, Plaintiff and Class members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent by Defendants to Plaintiff and Class Members from approximately October 147, 2016, through the date of filing this class action complaint.

4.   The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

5.   "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."1   The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

---

1.      *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

6.   The FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

7.   In enacting the TCPA, Congress intended to give consumers a choice as to how companies may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## JURISDICTION AND VENUE

8.   This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.   Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendants' transmission and marketing decisions regarding the unlawful and

unwanted calls to Plaintiff and the putative class from their various headquarters and locations in this District.

10. The Court has personal jurisdiction over Defendants because they conduct business in this state, maintain principle places of business in this state, market their services within this state, employ individuals in this state, and have availed themselves to the jurisdiction of this state by placing calls to Plaintiff and Class Members that originated from this state.

## PARTIES

11. Plaintiff resides in Royse City, Texas.

12. Defendant, ACCESS ONE CONSUMER HEALTH, INC. ("ACCESS ONE") is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Greenville, South Carolina.  ACCESS ONE's registered agent in Florida is Chief Financial Officer, 200 E. Gaines Street Tallahassee, Florida 32399.

13. Defendant, PRODIGY HEALTH GROUP LLC ("PRODIGY") is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 560 Village Blvd. Suite 340 West Palm Beach, Florida 33409.  PRODIGY's registered agent is Joy Stormont, 551 NW 26th Street Pompano Beach, Florida 33064.

14. Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited phone calls that are the subject matter of this Complaint.

15. Defendants are authorized to engage in business in the State of Florida, and at all times mentioned herein were each a corporation and "person," as defined by 47 U.S.C. § 153(39).

16. At all times relevant Defendants conducted business in the State of Florida, within this judicial district.

17. Defendants utilize telephone marketing services to send unsolicited marketing phone calls, including at least 25 unwanted phone calls to Plaintiff in one day in August 2020.

18. Defendants created, operated, approved, and/or ratified, the unsolicited marketing robocalls that are the subject of this lawsuit.

## FACTUAL ALLEGATIONS

19. Defendants are companies that engage in the marketing, sale, and finance of medical service discount contracts to consumers across the country.

20. Defendant, PRODIGY, is a sales agent, vendor, and/or dealer for the product and services promoted by Defendants through the use of the unlawful telemarketing campaign.

21. Defendant, ACCESS ONE, is the administrator and is the party responsible for administering the benefits of the product and services promoted by Defendants.

22. To increase the sales volume and profits of their medical service discount contracts, Defendants and/or their authorized sales agents repeatedly called thousands of consumers using an automatic telephone dialing system in violation of the TCPA.

23. When Plaintiff and the Class members answered their phones, they heard silence for several seconds, followed by a distinct "click" sound before being transferred to a live agent,

evidencing that the use of an automatic telephone dialing system was used to place the unwanted calls.

24. Defendants and/or their authorized sales agents used an ATDS to conceal or "spoof" their actual phone number to trick Plaintiffs into answering a familiar number.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MITCH CORBIN

25. During all times relevant hereto, Plaintiff was a "person" as that term is defined under the TCPA.

26. During all times relevant hereto, Plaintiff was employed as a Class B concrete driver responsible for the safe operation of concrete trucks.

27. Plaintiff registered his personal cell phone number ending in 7570 on the National Do-Not-Call Registry on or about September 2019.

28. On August 26, 2020, at 1:34 p.m. Plaintiff received a call on his personal cell phone during the workday from a number ending in 8652.

29. When Plaintiff answered his phone, Plaintiff heard silence for several seconds followed by a distinct "click" sound before being transferred to a live agent. Plaintiff recognized the live agent to be a male voice which attempted to sell Plaintiff an individual and/or family medical plans.  Approximately one minute into this call, the call was terminated.

30. Approximately 5 minutes later at 1:39 p.m. Plaintiff received another call on his personal call phone from the same number ending in 8652.  When Plaintiff answered this call, Plaintiff heard silence for several seconds then heard a distinct "click" sound before being transferred to a live agent.  This time, Plaintiff recognized the live agent to be a female voice which

attempted to sell Plaintiff the same individual and/or family medical plans.  Plaintiff advised the caller that he could not talk because he was at work and operating a large concrete truck – the safe operation of which is his primary duty and responsibility.  The caller then terminated the call.

31. Approximately 5 minutes later at 1:43 p.m. Plaintiff received another call on his personal cell phone from the same number ending in 8652.  When Plaintiff answered this call, there was no caller on the other end.

32. At approximately 1:45 p.m. Plaintiff received another call on his personal cell phone from the same number ending in 8652.  When Plaintiff answered this call, Plaintiff again heard silence for several seconds then heard a distinct "click" sound before being transferred to a live agent.  The male caller began the call by saying "Hello Mitch?"  Plaintiff responded by insisting that all calls to his personal cell phone stop immediately and quickly terminated the call.

33. Over the course of the next 3 hours Plaintiff received approximately 21 more phone calls from the same number ending in 8652.

34. The additional phone calls that Plaintiff received from the number ending 8652 were very distracting and disruptive to Plaintiff's safe operation of dangerous equipment and this interfered with his employment activity.

35. The live sales representative to whom Plaintiff was transferred in each of the calls Plaintiff answered is believed to be Defendant, PRODIGY.

36. Through the above unsolicited phone calls, Defendants contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

37. At the beginning of each call Plaintiff heard silence, followed by audible clicks that are associated with and indicate that an auto-dialer was used, and then after several seconds, the call was transferred to a live person. Upon information and belief, these facts demonstrate that the calls were made using an ATDS.

38. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39. Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

40. Upon information and belief, Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

41. Defendants utilized the ATDS to send the subject phone calls *en masse* to Plaintiff and Class Members using an autodial function regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

42. The content of the phone calls made to Plaintiff and the Class Members show that they were for marketing purposes and thus required Plaintiff's prior express written consent.

43. The telephone number Defendants called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

44. These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45. Plaintiff did not provide Defendants or its agents prior consent to receive these calls to her cellular telephone; therefore, the unsolicited messages violated 47 U.S.C. § 227(b)(1).

46. Defendants are and were aware that they were placing unsolicited calls to Plaintiff and other consumers without their prior consent.

47. Plaintiff was damaged by Defendants' calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted phone calls, forcing him to divert attention away from his personal time, work and homelife, and causing disruption to her work and other activities. Not only did the receipt of the phone calls distract and take time away from Plaintiff's personal activities, Plaintiff was forced to spend time investigating the calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes").

48. In order to investigate the companies who were responsible for the unwanted, illegal and unauthorized calls to Plaintiff's personal cell phone, Plaintiff contacted Defendants at the end of his work day at approximately 4:58 p.m. on August 26, 2020, so that he could purchase a medical plan from Defendants merely to discover their true identities. But for Plaintiff's efforts, Defendants' identity would continue to be concealed. Plaintiff promptly rescinded the medical plan upon discovering Defendants' identity.  Plaintiff was further damaged because he was required to spend his personal time investigating Defendants' identity.

49. Plaintiff had no relationship with Defendants prior to these illegal phone calls.

## LIABILITY FOR CALLS PLACED BY THIRD-PARTIES

50. To the extent Defendants outsourced their illegal robocalling, they are still liable for calls that violate the TCPA.

51. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling,* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

52. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

53. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships… through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶46).

54. Even if Defendants did not personally place the TCPA-violating calls, Defendants are still liable for the telemarketers' actions if they took steps to cause or approve the calls to be made, or if the calls were made pursuant to the Defendants' actual authority, apparent authority and/or ratification of the calls, and because they were acting as a joint enterprise or in concert with each other.

55. Defendants authorized their telemarketers to generate prospective customers. Defendants' utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendants were calling them directly from Defendants' the telemarketing department.

56. Defendants hired, permitted, and enjoyed the benefits of the mass robocalling.

57. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

58. The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

59. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (34).

60. Defendants requested and sought from its telemarketers to solicit particular target customer profiles on a mass scale.

61. Defendants specified the criteria of potential customers that would be most profitable for Defendants to sell to after they had been robocalled.

62. Defendants integrated their systems with their marketers so they could access the records of people with whom they executed contracts.

63. On information and belief, Defendants had access to the sales and customers generated by the illegal robocalling at issue in this case.

64. The May 2013 FCC Ruling also clarifies circumstances under which a telemarketer has apparent authority.

65. Defendants authorized their marketers to generate prospective customers for them.

66. Plaintiff reasonably believed that telemarketers who called him had received permission and instructions to conduct activity on behalf of Defendants.

67. Further, Defendants ratified the unlawful calls by knowingly accepting business that originated through illegal robocalls.

68. Despite being on notice of frequent violations, Defendants continue to work with companies that perform illegal robocalling.

69. By accepting these contacts and relying on them to execute contracts, Defendants "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers , as described in the Restatement (Third) of Agency.

70. Defendants further ratified the TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

71. Defendants took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

## **CLASS ACTION ALLEGATIONS**

72. Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **ATDS Class:** All persons in the United States who, within the four (4) years prior to the filing of this Complaint received a call from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent in violation of the TCPA.

> **Do Not Call Registry Class:** All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claim (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

73. Excluded from the Classes are Defendants, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendant or their subsidiaries or affiliates, and members of the federal judiciary.

74. This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

13

Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

75. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized marketing phone calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members.  Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

76. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and personnel records.

77. Members of the Classes may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

78. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

1. Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

2. Whether, during the class period Defendants or their agents called (other than a phone call made for emergency purposes or made with the prior consent of the called party) to a Class member using any automatic dialing to any telephone number assigned to a cellular phone service;

3. How Defendants obtained the phone numbers of Plaintiff and Class members;

4. Whether the dialing system used to call is an Automatic Telephone Dialing System;

5. Whether Defendants engaged in telemarketing content when it made the calls which are the subject of this lawsuit;

6. Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

7. Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;

8. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendants' acts and conduct;

9. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in its unlawful conduct; and

10. Whether Plaintiff and the Class are entitled to any other relief.

79. One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

80. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes. The claims of the Plaintiff and members of the Classes are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

81. Plaintiff and members of the Do-Not-Call-Registry Class each received more than one phone call within a 12-month time period, which Defendant placed or caused to be placed to Plaintiff and the members of the Class.

82. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

83. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant

by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

84.    **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

**COUNT I**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)**
**(Against PRODIGY on Behalf of Plaintiff and the ATDS Class)**

85.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 84 above as though fully stated herein.

86.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

87.     Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

88.     Defendant, PRODIGY – or third parties directed by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

89.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

90.     Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

91.     Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the

prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B).

92.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

93.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.     At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

95.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

96.     Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

97.     Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

98.     As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

99.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, PRODIGY HEALTH GROUP LLC, individually and jointly, as set forth in the Prayer for Relief below.

## COUNT II
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227
### (Against PRODIGY on Behalf of Plaintiff and the Do Not Call Registry Class)

100.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 84 of this Complaint as though fully stated herein.

101.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102.     47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

103.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

104.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

105.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

106.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

107.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, PRODIGY HEALTH GROUP LLC, individually and jointly, as set forth in the Prayer for Relief below.

## COUNT III
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(b)
**(Against ACCESS ONE on Behalf of Plaintiff and the ATDS Class)**

108.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 84 above as though fully stated herein.

109.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

110.    Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

111.    Defendant, ACCESS ONE – or third parties directed by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

112.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

113.    Defendant, ACCESS ONE has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

114.    Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the

prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B).

115.    The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

116.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

117.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

118.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

119.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

120.    Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

121.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

122.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, ACCESS ONE CONSUMER HEALTH, INC., individually and jointly, as set forth in the Prayer for Relief below.

**COUNT IV**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227**
**(Against ACCESS ONE on Behalf of Plaintiff and the Do Not Call Registry Class)**

123.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 84 of this Complaint as though fully stated herein.

124.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

125.     47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

126.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

127.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this

subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

128.    Defendant, ACCESS ONE, violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

129.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

130.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, ACCESS ONE CONSUMER HEALTH, INC., individually and jointly, as set forth in the Prayer for Relief below.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants, individually and jointly, for:

1. An order certifying this case as a class action, certifying Plaintiff as representative of the Classes, and designating Plaintiff's counsel as Class counsel;

2. Statutory damages of $500 per call in violation of the TCPA;

3. Willful damages at $1,500 per call in violation of the TCPA;

4. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

5. An injunction prohibiting Defendants from calling any individual whose number appears on the National Do Not Call Registry;

6. Reasonable attorney's fees and costs; and

7. Such further and other relief as this Court deems reasonable and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, MITCH CORBIN, demands a trial by jury on all appropriate claims.

**Dated this 23rd day of October 2020.**          Respectfully Submitted,

**EGGNATZ | PASCUCCI**                    **JORDAN RICHARDS, PLLC**
7450 Griffin Road, Suite 230              805 East Broward Blvd. Suite 301
Davie, Florida 33314                      Fort Lauderdale, Florida 33301
Tel: (954) 889-3359                       Tel: (954) 871-0050
*Counsel for Plaintiff*                   *Counsel for Plaintiff*

By: */s/ Joshua H. Eggnatz*               By: */s/ Jordan Richards*
JOSHUA H. EGGNATZ, ESQUIRE                JORDAN RICHARDS, ESQUIRE
Florida Bar No. 0067926                   Florida Bar No. 108372
MICHAEL PASCUCCI, ESQUIRE                 *Jordan@jordanrichardspllc.com*
Florida Bar No. 83397                     *Melissa@jordanrichardspllc.com*
*jeggnatz@justiceearned.com*              *Jake@jordanrichardspllc.com*
*mpascucci@justiceearned.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on October 23rd, 2020.

By: */s/ Jordan Richards*

JORDAN RICHARDS, ESQUIRE

Florida Bar No. 108372

## SERVICE LIST: